**J.F. SHEA COMPANY, INCORPORATED, a corporation authorized to do business in Illinois, Steppo Supply & Construction, Incorporated, an Illinois corporation and women's business enterprise, Al & Bert Construction Company, an Illinois corporation and disadvantaged business enterprise, et al., Plaintiffs–Appellants,**

**v.**

**CITY OF CHICAGO, a municipal corporation, Teresita B. Sagun, as Commissioner of the Department of Sewers of the City of Chicago, Alexander Grzyb, as Acting Purchasing Agent of the Department of Purchases, Contracts and Supplies, et al., Defendants–Appellees.**

**No. 92–4105.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 18, 1993.

Decided May 6, 1993.

Mark W. Damisch, John W. Damisch (argued), Michael Svanascini, Barclay, Damisch & Sinson, Chicago, IL, for plaintiffs-appellants.

Douglas McMillan, Corp. Counsel, Nancy Laureto, Kenneth L. Schmetterer, D.R. Edwards (argued), Office of Corp. Counsel, Appeals Div., Chicago, IL, for City of Chicago, Teresita B. Sagun and Alexander Grzyb.

Hugh R. McCombs, Jr., Phillip S. Reed, John J. Gearen, Mayer, Brown & Platt, Chicago, IL, for Walsh Const. Co., of Illinois.

Before COFFEY and ROVNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

J.F. Shea Company, Incorporated and other corporate plaintiffs and individual plaintiffs (collectively Shea) are appealing the district court's dismissal of their complaint and denial of their claims for equitable relief as moot. Shea's complaint alleged that the City of Chicago and the other defendants, employees of the City of Chicago and Walsh Construction Co. (collectively the City), violated both the Commerce Clause and the Privileges and Immunities Clause of the United States Constitution. Shea is a general contractor who was not awarded a sewer contract with the City because the City has a local business preference rule. The district court determined that the City was acting as a market participant and therefore the commerce clause was inapplicable and that none of the plaintiffs had standing to assert a violation of the Privileges and Immunities Clause. The only issues for us in this appeal are whether the district court erred in dismissing the complaint on the basis that the City was acting as a market participant and whether an Indiana employee of J.F. Shea has standing to raise the issue of the Privileges and Immunities Clause. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## I.

In its complaint, Shea alleged federal claims based on the Commerce Clause [1] and the Privileges and Immunities Clause [2] of the United States Constitution. In support of those claims, Shea alleged that it was the low bidder on a City construction project. Nevertheless, Alexander Grzyb, Acting Purchasing Agent for the City, applied a local business preference included in the bid documents for the contract and recommended that the contract be awarded to defendant Walsh Construction Company. The preference gives the bids of local businesses a 2% advantage over the bids of non-local businesses.[3]

Shea is a national general contractor that maintains an office in Chicago but has its headquarters in California. The other corporate plaintiffs alleged that they would be Shea's subcontractors if the contract were awarded to Shea. The individual plaintiffs, all of whom are residents of Illinois except for Jeff Salai (Salai), alleged that they are officers or employees of Shea or the other corporate plaintiffs.

The district court dismissed the complaint *sua sponte* on the basis that Shea had not and could not state a claim under the Commerce Clause and that none of the plaintiffs, including Salai, had standing to assert a claim under the Privileges and Immunities Clause. On appeal, Shea has abandoned its claims under the Privileges and Immunities Clause except with regard to Salai. Salai is an Indiana resident and employee of Shea. He invokes standing based on his assertion that the local business preference injures him because it may affect his livelihood.

## II.

In our *de novo* review of the district court's dismissal, we assume the truth of all well-pleaded factual allegations. *Janowsky v. United States*, 913 F.2d 393, 395 (7th Cir.1990).

### A. The Commerce Clause

In general, the "negative" or "dormant" aspect of the commerce clause prohibits states and local governments from protecting local economic interests by curtailing the movement of articles of commerce into or out of the state. *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 535, 69 S.Ct. 657, 663, 93 L.Ed. 865 (1949). However, the Supreme Court held in *Hughes v. Alexandria Scrap Co.* that "[n]othing in the purposes animating the Commerce Clause prohibits a State, in the absence of congressional action, from participating in the market and exercising the right to favor its own citizens over others." 426 U.S. 794, 810, 96 S.Ct. 2488, 2498, 49 L.Ed.2d 220 (1976). This exception to the general proposition that a state may not regulate in a way that favors its own citizens at the economic disadvantage of citizens of other states has come to be known as the "market participant" exception. In *Reeves, Inc. v. Stake*, 447 U.S. 429, 439, 100 S.Ct. 2271, 2278, 65 L.Ed.2d 244 (1980), the Supreme Court stated that "[e]venhandedness suggests that, when acting as proprietors, States should similarly share existing freedoms from federal constraints, including the inherent limits of the Commerce Clause." The Supreme Court's treatment of the market participant exception culminates in *White v. Massachusetts Council Constr. Employers, Inc.*, 460 U.S. 204, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983), where the Court upheld a requirement that all construction projects funded by the City of Boston be performed by a work-force at least half of whom are residents of Boston. The Supreme Court

---

1. U.S. Const. art. I, § 8, cl. 3.

2. U.S. Const. art. IV, § 2.

3. The Bid Proposal included the section entitled "Local Business Preference", which states:

   The Purchasing Agent, shall, in the purchase of all supplies, services and construction by competitive sealed bid, accept the lowest bid price or the lowest evaluated bid price from a responsive and responsible local business, provided that the bid does not exceed the lowest bid price or lowest evaluated bid price from a responsive and responsible non-local business by more than two percent (2%).

   A "local" business is a business authorized to do and doing business under the laws of the City of Chicago, a business located within the corporate limits of the City of Chicago, which has the majority of its regular, full-time work force located within the City of Chicago, and is subject to City of Chicago taxes.

held that "[i]nsofar as the city expended only its own funds in entering into construction contracts for public projects, it was a market participant and entitled to be treated as such under the rule of *Hughes*. . . ." *Id.* 460 U.S. at 214, 103 S.Ct. at 1048.

In its brief, Shea cites a number of commerce clause cases that stand for the proposition that a state or local government may not enact "protectionist" regulations.[4] Shea then concludes that the City "is 'protecting' its local interests by offering 'Chicago' contractors an edge." (Appellant's Brief at 18). However, Shea misses the point of the market participant exception. All of the cases Shea cites involve attempts by state or local governments to regulate the market or contracts to which the government is not a party. None of the cases that Shea cites for support involve contracts where the government entity is a party to the contract.[5] Shea has jumped to the second aspect of dormant commerce clause analysis without clearing the first hurdle. The impact of the local business preference on out-of-state residents figures into the analysis only *after* it is decided that the City is regulating the market rather than participating in it. *White*, 460 U.S. at 210, 103 S.Ct. at 1046; *W.C.M. Window Co. v. Bernardi*, 730 F.2d 486 (7th Cir. 1984).

Shea argues that the reasoning in *White* is not applicable because the City is acting as a market regulator by requiring Shea to become a local business and that the local business preference protects businesses rather than individuals. Shea contends that the reason that Boston was a market participant in *White* was that it had a right to protect its own citizens to ensure that the people employed on the project be citizens. This contention is simply unsupported by the *White* Court's reasoning. Boston was a market participant because it used its own funds in making contracts for public projects. *White*, 460 U.S. at 214–15, 103 S.Ct. at 1048. If the Supreme Court had adopted Shea's reasoning, Boston would be able to require that *all* projects in Boston (whether publicly funded or not) have a workforce of at least 50% residents as long as it was acting to protect its own citizens. *See also W.C.M. Window*, 730 F.2d at 495 (holding that preference rule that applied to all public construction projects violates Commerce Clause, but if it had applied only to projects financed by state there would be no violation). Boston was a market participant because it was a party to the contract. Further, despite Shea's contention, there is no regulation at stake here that *requires* Shea to do anything. Shea is free to contract with other parties without being subject to the local business preference. Shea can continue to submit bids to the City and presumably if Shea tendered a bid that was 2% lower than the lowest local business bid, Shea would receive the contract. Shea could also change locations if its business with the City is that important. In short, the City has not "required" Shea to do anything. The City was simply being selective about the parties with whom it contracts.

Shea's second argument that the City may only favor local citizens (not local businesses) under the market participant exception is likewise without merit. *Alexandria Scrap* and *Reeves* do not stand for the proposition that only citizens may be favored. In those cases the ones benefitted were businesses; not necessarily individuals. In fact, the issue considered by the Supreme Court in *Alexandria Scrap* was whether the Commerce Clause prohibits a State from "restrict[ing] its trade to its own *citizens or businesses* within the State." 426 U.S. at 808, 96 S.Ct. at 2497 (emphasis added). This argument seems to be based on Shea's misunderstand-

---

4. We note that the label "protectionist" does not aid our analysis. *See Reeves*, 447 U.S. at 442, 100 S.Ct. at 2280 ("We find the label 'protectionism' of little help in this context.").

5. *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources*, — U.S. —, —, 112 S.Ct. 2019, 2014, 119 L.Ed.2d 139 (1992) (State may not prohibit private landfill operators from accepting solid waste that originates outside the county in which their facilities are locat-

ed); *City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978) (State cannot prohibit private landfill operators from accepting waste from outside the state of New Jersey); *Dean Milk Co. v. Madison*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951) (City may not make it unlawful to sell milk as pasteurized unless it had been processed at plant within five mile radius of central square of Madison).

ing that the market participant exception is based on a right to protect citizens rather than on the notion that governments should be able to enter contracts free from interference from the Commerce Clause in the same way that private citizens are free from Commerce Clause restrictions. We have already disposed of that argument. When acting as a proprietor, a government shares the same freedom from the Commerce Clause that private parties enjoy. *Reeves,* 447 U.S. at 439, 100 S.Ct. at 2278.[6] Shea's argument fails to convince us that the market participant exception should not apply. Because the market participant exception to the Commerce Clause is applicable, the district court properly dismissed Shea's complaint.

## B. The Privileges and Immunities Clause

■ The only plaintiff who alleges standing for a claim under the Privileges and Immunities Clause is Jeff Salai (Salai). He is an employee of Shea and a resident of Indiana. All other plaintiffs have abandoned their claims of standing on this issue. They realize that corporations and residents of Illinois do not have standing under the Privileges and Immunities Clause. *United Bldg. & Constr. Trades Council v. Camden,* 465 U.S. 208, 217, 104 S.Ct. 1020, 1027, 79 L.Ed.2d 249 (1984) (in-state residents do not have standing under Privileges & Immunities Clause); *W.C.M. Window Co. v. Bernardi,* 730 F.2d 486, 492 (7th Cir.1984) (Privileges & Immunities Clause does not protect corporations).

■ For Salai to have standing, he must be able to allege an injury that affects his own legal rights. He cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). He must have a direct stake in the outcome of the case. *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Be-

cause employees must allege a separately cognizable injury, employees generally do not have standing to assert claims of the corporation because they lack direct injury. *Southwest Suburban Board of Realtors, Inc. v. Beverly Area Planning Association,* 830 F.2d 1374 (7th Cir.1987) (corporation's employees, officers, stockholders, and creditors had no injury distinct from corporation and lacked standing to maintain antitrust suit). *See also A–G–E Corp. v. United States,* 968 F.2d 650 (8th Cir.1992) (employees lacked standing to seek to enjoin Department of Interior from permitting states to employ resident preferences in federally funded contracts); *Willis v. Lipton,* 947 F.2d 998, 1000–01 (1st Cir.1991) (employee cannot assert RICO violation for corporate injury even though employee lost employment as a result of the conspiracy); *Warren v. Manufacturers National Bank,* 759 F.2d 542, 545 (6th Cir. 1985) (employee of corporation does not have standing to pursue fraud or RICO claim; lost employment was "merely incidental to the corporation's injury"); *Pitchford v. Pepi, Inc.,* 531 F.2d 92, 97 (3d Cir.1975) (corporate president lacked standing to sue either in his capacity as a stockholder or as an officer because injuries were derivative of the company's injuries), *cert. denied,* 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976), 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979).

Salai alleged that he is "an employee of SHEA employed as a project superintendent." However, to have standing, Shea must allege "injury in fact." *United States v. Students Challenging Regulatory Agcy. Procedures (SCRAP),* 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973). On appeal, Salai attempts to argue that he is injured directly by the local business preference because Shea could go out of business and he would lose his employment and his "livelihood". This claim is not based on any

---

6. Finally, Shea argues that if we allow the 2% business preference there might be no end to business preferences. Local governments could enact 5%, 10%, or even 20% preferences in their bids. Besides the obvious fact that these facts are not before us, in its attempt to ascend this slippery slope, Shea slips into the abyss of insignificance. The market participant doctrine stands for the proposition that when it enters the

private market, a local government may act as a private party. A private party could adopt a 50% local business preference without offending the Commerce Clause. So too could a local government adopt such a preference. We do not mean to intimate that such a preference would be reasonable or wise. We only suggest that despite other possible problems with such a rule, it would not be an affront to the Commerce Clause.

injury suffered directly by Salai. His claim is based on the injury of a third party, Shea. Salai is not subject to the local business preference, and because he has not attempted to contract with the City, he cannot allege a direct injury.

Salai also contends that the dismissal for lack of standing was improper under *United States v. SCRAP*. He reads *SCRAP* to stand for the proposition that a court should not dismiss for lack of standing but should instead allow defendants to move for summary judgment on the standing issue, thus allowing the defendant to prove that the allegations of standing are false. We do not read *SCRAP* this way.

In *SCRAP*, the Supreme Court held that members of an environmental group had asserted a direct injury that conferred standing upon them to bring an action to enjoin enforcement of a surcharge on freight rates as it related to goods being transported for recycling. The Court noted that the pleadings alleged a specific and perceptible harm that distinguished the plaintiffs from other citizens. The railroads, however, asserted that the allegations of injury were untrue. The Court stated that "[i]f, as appellants now assert, these allegations were in fact untrue, then the appellants should have moved for summary judgment on the standing issue and demonstrated to the District Court that the allegations were a sham and raised no genuine issue of fact." *Id.* at 689, 93 S.Ct. at 2417. The Court did not hold that the standing issue could *never* be disposed of through dismissal, however. *SCRAP* is distinguishable from Salai's situation. This would be a different case if Salai had alleged a direct injury that was not dependent upon the rights of a third party and the City were challenging the accuracy of that allegation. To prevent courts from ever dismissing a case for lack of standing would cause both courts and parties to waste precious resources. Salai has not alleged an injury that would confer standing. The district court therefore properly dismissed his claims under the Privileges and Immunities Clause.

## III.

For the foregoing reasons, the district court's dismissal of Shea's complaint is affirmed. Each party is to bear its own costs on appeal.

AFFIRMED.