DELAWARE COUNTY and Delaware County Solid Waste Authority

v.

RAYMOND T. OPDENAKER & SONS, INC., Appellant.

DELAWARE COUNTY and Delaware County Solid Waste Authority

v.

J & K TRASH REMOVAL, INC., Appellant.

DELAWARE COUNTY and Delaware County Solid Waste Authority

v.

JOHN L. BLOSENSKI & SONS, INC., Appellant.

DELAWARE COUNTY and Delaware County Solid Waste Authority

v.

C.T. IULIANO, INC. t/a White Glove Trash Disposal Removal Company, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 3, 1994.

Decided Dec. 20, 1994.

Stephen P. Lagoy, for appellants J & K Trash Removal, Inc., Raymond T. Opdenaker & Sons, Inc. and John L. Blosenski & Sons, Inc.

Michael F.X. Gillian, for appellee Delaware County Solid Waste Authority.

Francis X. Crowley, for appellee County of Delaware.

Before COLINS, President Judge, and PELLEGRINI and NEWMAN, JJ.

NEWMAN, Judge.

Raymond T. Opdenaker & Sons, Inc., J & K Trash Removal, Inc., John L. Blosenski & Sons, Inc., and C.T. Iuliano, Inc., t/a White Glove Trash Disposal Removal Co. (collectively, appellants) bring this consolidated appeal challenging a Court of Common Pleas of Delaware County (trial court) order granting a preliminary injunction against their "violating any of the terms and provisions" of Delaware County Waste Flow Control Ordinance No. 90–4 (ordinance).[1]

Delaware County (County) sought a preliminary injunction against appellants, asserting that appellants, four private commercial waste trash haulers, were tipping/processing trash at facilities in neighboring Montgomery and Philadelphia Counties, instead of at the designated facilities within Delaware County as required by the ordinance. The trial court explained that, before the County promulgated the ordinance, it entered a contract with Westinghouse Electric Corporation to construct and operate a resource recovery facility to incinerate all acceptable waste collected and generated in the County for twenty-five years. Pursuant to that contract, the trial court found that a tipping fee of sixty-two dollars per ton was payable by haulers. Furthermore, if the haulers did not deposit a specific minimum amount of tonnage at the Westinghouse facility on an annual basis, the County would have to pay the shortage, up to a maximum amount. The court also found that tipping fees at non-County transfer sites could be as low as forty-two dollars per ton. After considering all relevant evidence, the trial court rejected appellants' constitutional challenge to the ordinance and granted the preliminary injunction. Appellants now submit their challenge to this Court.

1. Section 2 of the ordinance provides in pertinent part:
   a. Mandated Flow Control: All Acceptable Waste generated in the County of Delaware shall be collected, transported and delivered to the County Designated Facilities in compliance with this Ordinance.
   b. County Designated Facilities: The County Designated Facilities subject to the flow control terms, conditions and requirements of this Ordinance are as follows:

1. Transfer Station No. 1, 2300 Concord Road, Feltonville, Chester Township.
2. Transfer Station No. 3, Sussex Boulevard and Marpit Drive, Lawrence Park Industrial Center, Broomall, Marple Township.
3. Any Facility which may hereafter be designated by the Director of the Solid Waste Management Department of the County of Delaware.

■ Our standard of review in a preliminary injunction appeal is limited. We may disturb the trial court's decision only for a clear abuse of discretion. *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 602 A.2d 1277 (1992).

## I

Appellants initially contend that the flow control ordinance requirement that haulers deposit all solid waste generated in Delaware County only at County-designated facilities is violative of the "negative" or "dormant" Commerce Clause of the United States Constitution.

The Commerce Clause provides that "Congress shall have Power ... To regulate Commerce ... among the several states ..." U.S. CONST. art. I, § 8, cl. 3. The United States Supreme Court has stated:

> [M]any subjects of potential federal regulation under that power inevitably escape congressional attention 'because of their local character and their number and diversity.' In the absence of federal legislation, these subjects are open to control by the States so long as they act within the restraints imposed by the Commerce Clause itself. The bounds of these restraints appear nowhere in the Commerce Clause, but have emerged gradually in the decisions of this Court giving effect to its basic purpose.

*Philadelphia v. New Jersey,* 437 U.S. 617, 623, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978) (citations omitted).

The Supreme Court has, of course, decided many cases assessing state and local laws under the so-called "dormant" Commerce Clause. It has specifically dealt with waste transfer and treatment in many recent cases, including *Philadelphia* and *C & A Carbone, Inc. v. Town of Clarkstown,* — U.S. —, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). While the Supreme Court decided *Carbone* after the trial court granted the preliminary injunction in the case *sub judice,* the case is especially pertinent here, because it sets forth the requisite constitutional analysis in "dormant" Commerce Clause cases and it involves a flow control ordinance.

In *Carbone,* the town of Clarkstown, New York, had a flow control ordinance requiring all solid waste be processed at a designated transfer station within Clarkstown before leaving the town. Clarkstown sought an injunction against other waste processors in the town, which were violating the ordinance by shipping or attempting to ship waste for further processing to sites in four other states. The avowed purpose of the ordinance was to retain the processing/tipping fees—set at eight-one dollars per ton, exceeding the fees available in the private market—charged at the transfer station to amortize the cost of the facility. The Supreme Court wrote that, "[b]ecause it attains this goal by depriving competitors, including out-of-state firms, of access to a local market, we hold that the flow control ordinance violates the Commerce Clause." *Id.* at —, 114 S.Ct. at 1680.

Applying the preceding constitutional analysis in reaching its decision, the Supreme Court set out to "confirm that the flow control ordinance does regulate interstate commerce." *Id.* at —, 114 S.Ct. at 1681. The Supreme Court concluded that, because the private processors received waste from places other than Clarkstown, including out-of-state sites, the requirement that the processors send waste to the town's transfer station at an additional cost

> drives up the cost for out-of-state interests to dispose of their solid wastes. Furthermore, even as to waste originant in Clarkstown, the ordinance prevents everyone except the favored local operator from performing the initial processing step. The ordinance thus deprives out-of-state businesses of access to a local market. These economic effects are more than enough to bring the Clarkstown ordinance within the purview of the Commerce Clause. It is well settled that actions are within the domain of the Commerce Clause if they burden interstate commerce or impede its free flow. *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 31 [57 S.Ct. 615, 621, 81 L.Ed. 893] (1937).

*Carbone,* — U.S. at —, 114 S.Ct. at 1681–82.

Once the Supreme Court confirmed that the ordinance did regulate interstate com-

merce, the next question became whether the flow control ordinance is valid despite its undoubted effect on interstate commerce. For this inquiry, our case law yields two lines of analysis: first, whether the ordinance discriminates against interstate commerce, *Philadelphia;* and second, whether the ordinance imposes a burden on interstate commerce that is clearly excessive in relation to the putative local benefits. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). If the courts determined that the first line of analysis is appropriate, i.e., the local law discriminates "against interstate commerce in favor of local business or investment," the law "is *per se* invalid, save in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Carbone,* —— U.S. at ——, 114 S.Ct. at 1683. Reasoning that the ordinance was discriminatory, the Supreme Court, in *Carbone,* held that the *Philadelphia* line of analysis was appropriate. Pursuant to that analysis, the Court declared the ordinance invalid.

After the Supreme Court decided *Carbone,* we were presented with a Commerce Clause challenge to a flow control ordinance in Lehigh County, Pennsylvania. *Empire Sanitary Landfill, Inc. v. Department of Environmental Resources,* —— Pa.Commonwealth Ct. ——, 645 A.2d 413 (1994). We stated that the "ordinance at issue here cannot be said to be facially discriminatory, because it does not specifically state that county-generated waste must only be disposed of at a facility within the county or state." *Id.* at ——, 645 A.2d at 419. We thereby distinguished *Carbone* in part and concluded that the *Pike* analysis was applicable. Nevertheless, although it is arguably more likely that

local regulations will withstand a Commerce Clause challenge under the *Pike* analysis than under the *Philadelphia* analysis, we declared Lehigh County's flow control ordinance invalid under *Pike.*

■ Having set forth the relevant legal background in this appeal, we now turn to the parties' arguments. Appellants argue that *Carbone* involved an extraordinarily similar ordinance to the one at issue here and clearly invalidates this ordinance. They assert that a state or subdivision cannot require that an article be processed locally before it enters the stream of commerce; such a requirement discriminates against interstate commerce because it hoards solid waste, and the demand to get rid of it, for the benefit of the preferred processing facility. *Carbone,* —— U.S. at ——, 114 S.Ct. at 1683. Even if the ordinance here is not discriminatory, appellants argue, citing *Empire Sanitary Landfill,* the burden on interstate commerce is excessive.[2]

The County responds by asserting that appellants mischaracterize the importance of *Carbone.* It contends that the Supreme Court did not create any new law in *Carbone* and, furthermore, did not declare all local flow control ordinances unconstitutional. The County initially argues that the facts proven at trial distinguish this case from *Carbone.* Unlike *Carbone,* it maintains, the ordinance pertains only to waste generated in the County, not waste generated elsewhere. Second, the County contends that appellants do not dispose at out-of-state sites, but instead seek disposal within the Commonwealth, specifically, in Philadelphia and Montgomery Counties. Third, the County asserts that it did not negotiate with one favored company but used a bidding process

**2.** Appellants submit further that the United States District Court for the Middle District of Pennsylvania, in *Southcentral Pennsylvania Waste Haulers Association v. Bedford–Fulton–Huntingdon Solid Waste Authority* (No. 1: CV–93–1318, filed June 24, 1994), considered *Carbone* and concluded flow control is *per se* invalid as discriminatory against interstate commerce even though part of a state regulatory scheme. This federal court decision is a memorandum opinion, and we will not consider it here. Simi-

larly, the County apparently relies on such opinions in asserting that all federal third circuit cases have held flow-control ordinances constitutional; it also relies on what it refers to as "*Borough of Haddon Heights v. Shinn* (No. 94–CV–2753) (U.S.D.C., N.J.)" in arguing that, despite *Carbone,* an injunction against enforcement of flow-control was denied. We note that the County has not even attached a copy of this opinion to its brief.

open to interstate business.[3] Fourth, the County maintains that the ordinance allows for the County to designate other facilities, including out-of-state facilities, although none have applied for such designation. Finally, the County states that the avowed purpose of the ordinance here is not purely economic and was passed under legislative authorization in Act 101,[4] a state act requiring waste disposal plans. The County concludes that the ordinance satisfies either constitutional test: it does not discriminate against interstate commerce and the obvious local benefits of waste flow-control far outweigh any burdens on interstate commerce. In the alternative, the County maintains that even if the ordinance does discriminate, it furthers a legitimate local interest without less restrictive methods available, due to a serious shortage of waste capacity and the importance of processing and disposal.[5]

■ We conclude that the trial court did not abuse its discretion in rejecting appellants' constitutional challenge to the County's action for preliminary injunction against violating section 2 of the ordinance. It is evident from the record and the arguments herein that, at the preliminary injunction stage, there was no evidence that these appellants or anyone else were engaged in interstate commerce or that interstate commerce was affected. For example, it does not appear that these appellants either picked up waste from other states or tipped in other states, as opposed to only doing so in other counties.[6] Both circumstances were present in *Carbone*, and were the objects of the discussion in confirming whether interstate commerce is involved.[7] Thus, there is a lack of proof on an issue that must be proven before raising or deciding questions such as whether the *Philadelphia* or the *Pike* test is applicable. Such proof remains important in assessing the effects on interstate commerce under either test.

As the parties asserting the constitutional challenge, appellants had the burden to sustain that challenge with evidence on the fundamental elements required to resolve the constitutional question. Appellants did not do this at the preliminary injunction stage. Without more, this court would be attempting to decide a constitutional legal question in a vacuum, absent proof of how the constitutionality of this ordinance creates a case or controversy. Of course, appellants will have another opportunity to prove their case at a permanent injunction hearing, which the trial court originally scheduled in its order. At that stage, the trial court can examine the evidence and revisit the constitutional question.

Based on our foregoing discussion, we reject appellants' first contention.

II

■ Appellants next contend that because the County had an adequate remedy at law

---

3. The County points out that a Delaware corporation operates the resource recovery facility.

4. The Municipal Waste Planning, Recycling and Waste Reduction Act, Act of July 28, 1988, P.L. 566, No. 101, 53 P.S. §§ 4000.101–4000.1904.

5. At oral argument, the County also stated that legislation was pending in Congress that would "grandfather" existing flow control ordinances. This would arguably render the case moot, as congressional action in the field might remove flow-control ordinances from the realm of "dormant" commerce clause analysis. However, shortly after we heard oral argument in this case, Congress adjourned without enacting such legislation.

6. It is true that an ordinance is no less discriminatory because in-state or in-town processors are also covered by a prohibition therein. *Carbone*. Clearly, however, this does not mean that the mere fact, standing alone, that an ordinance discriminates as to in-state or in-town processors violates or, indeed, implicates the Commerce Clause.

7. Our review of other cases prior to *Carbone* confirms the importance of interstate commerce involvement. For instance, in *Pike*, appellee was a company which was prohibited by an Arizona official from sending cantaloupes from Arizona to California for packing and processing. In *Philadelphia*, New Jersey enacted a law which forbade the importation of solid waste; the law was challenged by operators in New Jersey and several cities in other states that had agreements with those operators for waste disposal. In *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951), an Illinois corporation engaged in distributing milk in Illinois and Wisconsin challenged a city ordinance of Madison, Wisconsin, requiring milk sold there to be processed at an approved plant within five miles of the city.

and failed to establish a clear right to relief, the trial court should not have granted a preliminary injunction.[8] They maintain that, given the state of the law—unsettled at the time of injunction, now settled in their favor by *Carbone*—the County did not prove a clear legal right to relief. Further, appellants assert that there is an adequate remedy at law through monetary damages. The County argues in response that the trial court did not commit a clear abuse of its discretion, which is the test on appellate review. *Maritrans.* The County also claims it proved there was no adequate remedy at law, because ordinance violations will jeopardize the solid waste management program, thus threatening the health and welfare of County residents, and monetary damages would not make the County whole. Last, the County argues that Act 101 expressly provides that violations of a county plan are violations of Act 101 and constitute public nuisances. 53 P.S. § 4000.1701.

We agree with the County's position and conclude that the trial court did not abuse its discretion in this regard. The County proved a violation of section 2 of the ordinance, and as discussed above, appellants did not undermine the County's likelihood of success on the merits since they did not show that their constitutional rights were violated by section 2. Appellants also have not convinced us that the County failed to prove harm that cannot be compensated by damages so that it can be held that the trial court abused its discretion in granting injunctive relief. *See Maritrans.*

■ Finally, as noted above, the trial court enjoined appellants from "violating any of the terms and provisions" of the ordinance. However, the County alleged and sought to prove only a violation of section 2 of the ordinance, concerning tipping at County-designated facilities. The trial court should have limited its order to this subject. Thus, we affirm the trial court's order only as far as the order preliminarily enjoins appellants from violating section 2 of the ordinance and modify the trial court's order accordingly.

Therefore, the trial court's order granting the preliminary injunction against appellants is affirmed in part, and modified in part.

### ORDER

AND NOW, this 20th day of December, 1994, we affirm in part and modify in part the order of the Court of Common Pleas of Delaware County. We affirm the order only to the extent that it preliminarily enjoins appellants from violating section 2 of Delaware County Waste Flow Control Ordinance No. 90–4 (ordinance) and modify the order accordingly.

---

8. We have held:
   [A] court may grant a preliminary injunction only where the moving party establishes the following elements: (1) that relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages; (2) that greater injury will occur from refusing the injunction than from granting it; (3) that the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct; (4) that the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and (5) that the plaintiff's right to relief is clear. Because one of the elements which the moving party must establish is that 'his right to relief is clear,' it is of course necessary that the moving party be able to show that he has a reasonable likelihood of success on the merits.
   *Lewis v. Harrisburg,* 158 Pa.Commonwealth Ct. 318, 324, 631 A.2d 807, 810 (1993).