IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keystone Sanitary Landfill, Inc. and : 
Solid Waste Services, Inc. d/b/a J.P. : 
Mascaro & Sons, : 
                 Appellants : 
                  :   No. 746 C.D. 2020
       v. : 
                  :   Argued: April 3, 2023
Monroe County Municipal Waste : 
Management Authority : 

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                            FILED:  March 27, 2024

       Keystone Sanitary Landfill, Inc. (Keystone), and Solid Waste Services, Inc., doing business as J.P. Mascaro & Sons (Mascaro) (collectively, Appellants), appeal from the June 30, 2020 order entered by the Monroe County Court of Common Pleas (trial court) in favor of the Monroe County Municipal Waste Management Authority (Authority). On appeal, Appellants argue that Section 506(b) of the Municipal Waste Planning, Recycling and Waste Reduction Act (Municipal Waste Act),[1] 53 P.S. § 4000.506(b) (Section 506(b)), bars the Authority from interfering with a "lifetime" waste disposal contract between Keystone and Mascaro. We affirm.

## I. BACKGROUND[2]

       We need not exhaustively recount the lengthy history of this case, which

---

[1] Act of July 28, 1988, P.L. 556, No. 101, *as amended*, 53 P.S. §§ 4000.101-4000.1904 (Municipal Waste Act or Act 101). For ease, we may not necessarily adhere to our formal citation requirements in citing to the numerous unconsolidated statutes at issue.

[2] In reviewing the denial of a post-trial motion, we view "the evidence and all reasonable

began in 2010.[3]  Briefly, the Municipal Waste Act requires counties, such as Monroe County (County), to implement a 10-year waste management plan that must be approved by the Department of Environmental Protection (DEP).  The County designated the Authority as the party to implement the County's waste management plan.  *Keystone I*, slip op. at 2.  For context, we provide a brief overview of the Municipal Waste Act.

### A. Waste Management Plans Under the Municipal Waste Act

One of the purposes of the Municipal Waste Act is to protect "the public health, safety and welfare from the short- and long-term dangers of transportation, processing, treatment, storage and disposal of municipal waste."  Section 102(b)(3)

---

inferences therefrom in the light most favorable to the verdict winner."  *The Bert Co. v. Turk*, 298 A.3d 44, 49 n.5 (Pa. 2023) (citation omitted).  The official record transmitted to this Court is incomplete as it lacks trial exhibits and documents that were never electronically filed.  Some of the missing documents, however, were included in the reproduced record.  *See* Pa.R.A.P. 1921 Note.  We respectfully request that all involved ensure the transmission of a complete record.  *See id.*  Finally, the applicable law employs numerous defined terms such as "remaining available permitted capacity."  *See, e.g.*, Section 103 of Act 101, 53 P.S. § 4000.103.  Because precision was not always required, we simplified our discussion as needed to avoid unnecessary exposition.

[3] *See Monroe Cnty. Mun. Waste Mgmt. Auth. v. Dep't of Env't Prot.* (Pa. Env't Hr'g Bd., No. 2010-050-C, filed Oct. 26, 2010), 2010 WL 7767632; *Pa. Waste Indus. Ass'n v. Monroe Cnty. Mun. Waste Management Auth.*, 80 A.3d 546 (Pa. Cmwlth. 2013) (*en banc*) (not involving Appellants); *Monroe Cnty. Mun. Waste Mgmt. Auth. v. Keystone Sanitary Landfill, Inc.* (Pa. Cmwlth., No. 239 M.D. 2015, filed Aug. 20, 2015) (Simpson, J.) (single-judge op.) (*Keystone I*); *Keystone Sanitary Landfill, Inc. v. Monroe Cnty. Mun. Waste Auth.*, 148 A.3d 915 (Pa. Cmwlth. 2016).

Briefly, *Keystone I* resolved whether this Court could exercise original jurisdiction over the Authority's petition for review against Appellants and the Department of Environmental Protection (DEP).  *Keystone I*, slip op. at 1.  DEP filed a preliminary objection on the basis that it was not an indispensable party.  *Id.* at 11-12.  The *Keystone I* Court sustained DEP's preliminary objection and dismissed the petition for review.  *Id.*  Because the Court *dismissed* the Authority's petition for review for lack of original jurisdiction, the Court could not render any decision on the *merits* that would bind a subsequent tribunal.  *See City of Phila. v. Stradford Arms, Inc.*, 274 A.2d 277, 280 (Pa. Cmwlth. 1971) (*en banc*) (*Stradford*) (explaining that the law of the case or similar doctrine applies only when the initial tribunal has equivalent jurisdiction as the latter tribunal). Nevertheless, for ease of discussion, we may cite to *Keystone I*.

2

of Act 101, 53 P.S. § 4000.102(b)(3). Another purpose is to shift "responsibility for developing and implementing municipal waste management plans from municipalities to counties." *Id.* § 4000.102(b)(10). The Municipal Waste Act also requires DEP to ensure that landfill "facilities operate in a manner that protects the environment as well as public health and safety." *Id.* § 4000.102(b)(14).

To achieve those purposes, the Municipal Waste Act details various requirements for a county's waste management plan. Section 502 of Act 101, 53 P.S. § 4000.502. For example, a plan must designate certain businesses for the processing and disposal of municipal waste. *Id.* § 4000.502(c). A plan must also "estimate the processing or disposal capacity needed for the municipal waste that will be generated in the county during the next ten years." *Id.* § 4000.502(d). In addition, a plan must address how the county would finance waste disposal for the next 10 years. *Id.* § 4000.502(f).

The Municipal Waste Act also provides when a county must revise its waste management plan. Section 501(c)(1)-(3) of Act 101, 53 P.S. § 4000.501(c)(1)-(3).[4] For example, a county must revise its plan three years before, very simply, the designated landfills fill up. *Id.* § 4000.501(c)(1). A county must also revise its plan

---

[4] We state the relevant statute in full:

**(c) Plan revisions.--**Each county with an approved municipal waste management plan shall submit a revised plan to the department in accordance with the requirements of this act:
(1) At least three years prior to the time all remaining available permitted capacity for the county will be exhausted.
(2) For plans approved pursuant to subsection (b), within two years of the effective date of this act. Such plan revisions shall be consistent with the requirements of this chapter except to the extent that the county demonstrates to the department's satisfaction that irrevocable contracts made by or pursuant to the approved plan preclude compliance with the requirements of this chapter.
(3) When otherwise required by the department.

53 P.S. § 4000.501(c)(1)-(3). We discuss the trial court's reliance on this Section below.

3

at DEP's request.  *Id.* § 4000.501(c)(3).

DEP promulgated similar regulations.  25 Pa. Code § 272.251(a).[5]  For example, DEP requires a county to submit a revised plan "at the earliest of the following events."  *Id.*  One event is three years "prior to the *expiration* of the term of the county's approved plan."  *Id.* § 272.251(a)(2) (emphasis added).[6]  We next

---

[5] Section 272.251(a)(1)-(3) provides in full:

(a) A county with an approved municipal waste management plan shall submit a revised plan to the Department in accordance with this subchapter at the earliest of the following events:
    (1) At least 3 years prior to the expiration of the capacity assurances necessary to dispose or process the municipal waste generated in the county.
    (2) At least 3 years prior to the expiration of the term of the county's approved plan.
    (3) When otherwise required by the Department.

25 Pa. Code § 272.251(a)(1)-(3).

[6] In addition to statutes and regulations, we may refer to an agency's guidance documents, which "come in an abundance of formats with a diversity of names, including guidances, manuals, interpretive memoranda, staff instructions, policy statements, circulars, bulletins, advisories, press releases and others." *Nw. Youth Servs., Inc. v. Dep't of Pub. Welfare*, 66 A.3d 301, 310 (Pa. 2013) (*Youth*) (cleaned up).  Such documents may "explain or offer specific and conforming content to existing statutes or regulations within the agency's purview . . . ." *Id.* at 311 (citations omitted).  Thus, courts may defer to such documents to the extent they "explain preexisting legal obligations and relations that are embodied in the agency's authorizing statutes and regulations." *Id.* (citation omitted).  The parties, however, did not discuss the relevant DEP guidance document, which was cited in the record.  *See* Pls.' Ex. 7 (Letter from DEP to the Authority (Mar. 17, 2010) (citing Dep't of Env't Prot., Bureau of Waste Mgmt., Doc. No. 254-2212-504, Guidelines for the Development and Implementation of County Municipal Waste Management Plan Revisions (Jan. 2, 2010) (DEP Guidance Document))).

In pertinent part, DEP repeats that "all plans must be revised and submitted to the Department . . . at least three years before the *expiration* of the term of the county's approved plan."  DEP Guidance Document at 3-4 (citing 25 Pa. Code § 272.251 and emphasis added).  Revised plans "must be for a minimum of ten years." *Id.* at 4.  At length, DEP explains why a plan must provide for 10 years of waste disposal capacity. *Id.* at 7.  Further, DEP points out that a revised plan should correct "parts of the plan that have been found to be in error or unrealistic during the period the plan has been in effect." *Id.* at 5.  Relatedly, DEP considers "a ten-year contract as an acceptable duration" for disposing of waste at a particular facility. *Id.* at 14.  DEP cautions counties, when presenting their revised plans, from merely extending any existing 10-year contracts. *Id.*

discuss the Authority's waste management plan.

## B. The Authority's Waste Management Plan

On November 20, 1998, the Authority's 10-year plan went into effect, which designated Appellants as businesses that could dispose of the County's waste. *Keystone I*, slip op. at 2. Keystone operates a landfill in Lackawanna County, and Mascaro transports the County's waste to Keystone, among other landfills.

In 2006, the Authority submitted to DEP revisions to the 1998 plan. Trial Ct. Op., 3/13/20, at 4. In 2010, DEP notified the Authority that its 2006 revisions were insufficient. *Id.*; Pls.' Ex. 7.[7] As a result, litigation between the Authority and DEP ensued, and they settled in 2010. *Keystone I*, slip op. at 3-4; Pls.' Ex. 8. The settlement agreement provided, *inter alia*, that the Authority would submit a new 10-year plan to DEP, which DEP approved for 2015.[8] Pls.' Ex. 8. The

---

The DEP Guidance Document also explains when "interference" with a county's waste management plan occurs. *Id.* at 19. Interference occurs when a county's waste is transported to a facility not designated by the county's plan. *Id.* "Transporters of municipal waste who deliver waste to facilities that are not designated in a county plan may be violating the municipal waste regulations and [the Municipal Waste Act], which require compliance and non-interference with county plans." *Id.* In sum, a county's waste management plan specifies how a county will dispose of its waste for the next 10 years, including identifying businesses that will transport and dispose of the county's waste. *See id.*

[7] For context, we quote from DEP's letter to the Authority:

The 1998 Monroe County Municipal Waste Management Plan (the Plan), approved by the Department of Environmental Protection on November 20, 1998, provided for a ten (10) year planning period. The Plan is now expired and needs to be updated in order to meet Act 101 planning requirements for the next subsequent ten (10) year planning period.

A plan revision will need to conform with the format and content of plan revisions found in 25 Pa. Code § 272.204(d) of Pennsylvania's municipal waste regulations and Section II.C of the Department's Guidelines for the Development and Implementation of County Municipal Waste Management Plan Revisions, as amended January 2, 2010.

Pls.' Ex. 7. This letter cited to the DEP Guidance Document that the parties did not discuss.

[8] Precisely, in 2014, DEP approved the Authority's plan, which would commence on

5

Authority's 2015 plan did not designate Appellants as approved businesses.[9] Trial Ct. Op., 3/13/20, at 6, 13-14; *Keystone I*, slip op. at 4.

Meanwhile, on December 1, 2008, Appellants executed a contract "in which Mascaro agreed to dispose of municipal waste at Keystone's landfill" for the life of said landfill. Trial Ct. Op., 3/13/20, at 8-9. Pursuant to this "lifetime" contract but contrary to the Authority's 2015 plan, Mascaro continued to transport the County's municipal waste to Keystone beyond 2015. *Id.* at 13-14. As a result, the Authority filed 24 summary criminal complaints against Mascaro.[10] *Id.* at 6.[11]

### C. Procedural History

Appellants sued the Authority in the trial court requesting a declaratory judgment and injunctive relief under Section 506(b), and the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541. Compl., 2/26/15, at 20-23.[12] Appellants requested, in

---

January 1, 2015. The Authority's 2015 plan contains non-interference language similar to 53 P.S. § 4000.506. We quote the disputed terms of the Authority-DEP settlement agreement below.

[9] Notably, Appellants did not participate in the bidding process for the 2015 plan. Trial Ct. Op., 3/13/20, at 13-14.

[10] The parties did not discuss how the Authority could criminally cite Mascaro. Apparently, under Article VII of the Monroe County Municipal Waste Management Ordinance, the Authority may cite violators for violating the ordinance. Art. VII, Monroe Cnty. Mun. Waste Mgmt. Ordinance (2019). Following "conviction in a summary proceeding," a court may sentence a violator to pay a fine, among other penalties. *Id.* It appears that a convicted violator may pursue any remedies it would have following a summary conviction. *See also* Section 1705 of Act 101, 53 P.S. § 4000.1705 (listing criminal penalties); Section 1701(a) of Act 101, 53 P.S. § 4000.1701(a) (listing various offenses, including violating "the terms or conditions of any municipal waste management plan"); Section 1702 of Act 101, 53 P.S. § 4000.1702 (permitting DEP to issue orders compelling persons to comply with an approved municipal waste management plan).

[11] We discuss the following in further detail below. Simply, Appellants believe their December 1, 2008 contract is inviolable because it was executed after the Authority's waste management plan expired on November 20, 2008. *Keystone I*, slip op. at 4. The Authority disagrees.

[12] *See also* Section 1711(a)-(b) of Act 101, 53 P.S. § 4000.1711(a)-(b) (stating "any aggrieved person may commence a civil action on his own behalf against any person who is alleged to be in violation of this act," and that the Environmental Hearing Board has jurisdiction over suits brought against DEP); *Greene Cnty. Citizens United ex rel. Cumpston v. Greene Cnty. Solid Waste Auth.*,

6

relevant part, the following declaratory relief.[13]

First, Appellants' December 2008 contract is "valid and enforceable and . . . allows Mascaro to dispose of and Keystone to accept for disposal" the County's municipal waste. *Id.* at 20. Second, Appellants' December 2008 contract "is entitled to the protections of the disposal contract 'non-interference provisions' of [Section] 506(b) of" the Municipal Waste Act. *Id.* at 21. Third, because Appellants' December 2008 contract is subject to Section 506(b), "there is no lawful basis for the summary criminal proceedings that the Authority has commenced and continues to commence and prosecute against Mascaro for disposing of Monroe County municipal waste" at Keystone's landfill. *Id.* In sum, Appellants requested a finding that the Authority's 1998 10-year waste management plan expired on November 20, 2008, and therefore Appellants' December 2008 "lifetime" contract is "protected" under Section 506(b). *Id.*[14]

Following a bench trial, the trial court denied Appellants' request for declaratory relief. Appellants timely filed, and the court denied, their post-trial motion. Trial Ct. Op., 3/13/20; Post-Trial Mot., 4/1/20. Appellants timely appealed

---

636 A.2d 1299, 1302 (Pa. Cmwlth. 1994). Thus, it appears that because this is not a suit against DEP, the trial court permissibly exercised jurisdiction. *See* 42 Pa.C.S. § 7541(a), (c)(2).

[13] Appellants also requested a preliminary injunction, which the parties resolved via stipulation. Trial Ct. Op., 3/13/20, at 6-7. Specifically, the parties stipulated, *inter alia*, the following: (1) Mascaro would continue to transport waste to Keystone; (2) the parties would request the stay of any pending criminal complaints; and (3) the Authority would cease citing Mascaro while the instant case was pending. *Id.*; Pls.' Ex. 18.

[14] *See Keystone I*, slip op. at 9 (stating that Appellants "seek a declaration that the 1998 plan expired in November 2008 and it was not replaced by an approved plan until 2014[, *i.e.*, the 2015 plan]; consequently, [Appellants'] 2008 contract is protected by" Section 506(b)). Appellants also sought declaratory relief based on contract non-interference provisions in the Authority's 2015 plan. Appellants requested substantially similar injunctive relief. Compl. at 23. Appellants additionally asked for an injunction against the Authority "from tortiously and unlawfully interfering" with Appellants' "existing long-term business relationship." *Id.*

7

and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.[15]

### D. The Trial Court's Reasoning in Denying Relief

The trial court held that Appellants' December 2008 "lifetime" contract interfered with the Authority's DEP-approved waste management plan and thus was "not entitled to the protections of the . . . contract non-interference provisions of" Section 506(b). Trial Ct. Op., 3/13/20, at 19. The court also held Section 506(b) was not a "defense to the summary criminal proceedings that the Authority has commenced against Mascaro for disposing of [the County's] municipal waste at" Keystone's landfill.[16] *Id.* at 20. Simply, under the Municipal Waste Act, the Authority could "interfere" with Appellants' contract. *See id.*

### 1. The Statutory Language

In support, the trial court reasoned that under the Municipal Waste Act,

---

[15] *See* Pa.R.A.P. 341 cmt. (stating that a "party aggrieved by an interlocutory order granting or denying a declaratory judgment, where the order satisfies the criteria for 'finality' . . . may elect to proceed under Pa.R.A.P. 311(a)(8) or" under Pa.R.A.P. 341(b)(1), *i.e.*, after filing a post-trial motion); *Motorists Mut. Ins. Co. v. Pinkerton*, 830 A.2d 958, 964 (Pa. 2003) (explaining that a post-trial motion must be filed following an order resolving declaratory judgment). The trial court did not explicitly deny Appellants' request for injunctive relief, but arguably the denial is implicit given the court's denial of declaratory judgment. *See* Trial Ct. Op., 3/13/20, at 19-20. Because entry of judgment was unnecessary, we review the trial court's order resolving declaratory judgment, as perfected by the trial court's denial of Appellants' post-trial motion.

Appellants stated their post-trial motion was timely filed "in accordance with the suspended time calculations and time deadlines of the emergency" orders issued due to the 2020 pandemic. Post-Trial Mot. at 1 n.1; *see In re: Gen. Statewide Jud. Emergency* (Pa., Nos. 531 & 532 Jud. Admin. Dkt., filed Apr. 1, 2020) (*per curiam* order). We add Appellants invoked 25 Pa. Code § 272.251(a)(2) both in their proposed findings of fact and post-trial motion. *See* Proposed Findings of Fact ¶ 56; Post-Trial Mot. ¶¶ 23, 57.

[16] The trial court also held that Appellants' contract was not subject to the "contract non-interference provisions" present in the Authority's 2015 plan. Trial Ct. Op., 3/13/20, at 19. Appellants, however, have not explicitly challenged "the validity or enforceability" of the Authority's 2015 plan. *Keystone I*, slip op. at 10. Rather, per *Keystone I*, Appellants have sought "a determination as to whether the [December] 2008 contract is subject to the noninterference protections of" Section 506(b) because the Authority did not have a DEP-approved waste management plan in place when Appellants executed their contract. *Id.*

a county must conditionally "submit a revised plan" to DEP. *Id.* at 15 (discussing 53 P.S. § 4000.501(c)). One condition is that the county must submit a revised plan at least three years before the county's landfills reach capacity. *Id.* (citing 53 P.S. § 4000.501(c)(1)). Another condition is that DEP requests the county to submit a revised plan. *Id.* (citing 53 P.S. § 4000.501(c)(3)).

With respect to the former, the trial court stated there was no evidence that the County's landfills would exceed their maximum capacity within three years. *Id.* As for the latter, the court acknowledged that DEP requested that the Authority revise its plan in DEP's March 2010 letter and the Authority-DEP settlement agreement. *Id.* at 16. Indeed, the trial court quoted from DEP's March 2010 letter, which stated that the Authority's plan "is now expired and needs to be updated in order to meet Act 101 planning requirements for the next subsequent ten (10) year planning period." *Id.* (quoting DEP's March 2010 letter).

Nevertheless, the trial court focused on the term "planning period" and reasoned that the Municipal Waste Act provides for a 10-year planning period. *See id.* To the extent that the statutory language or correspondence refers to "ten years" or "expiration," the trial court maintained those references were to a "planning period." *Id.* Per the trial court, the Municipal Waste Act does not provide that a waste management plan *itself* expires after 10 years. *See id.*

Because the Municipal Waste Act does not provide for plan expiration, the trial court held that the Authority's 1998 plan had never expired. *Id.* Because the Authority's 1998 plan had never expired, the "Authority has not been without an approved plan," and thus, Appellants cannot "take advantage of a vacuum and make a lifetime contract when the Authority was without an approved plan . . . ." *Id.* at 17. The Municipal Waste Act, per the trial court, "does not support [Appellants']

9

contention" that the 1998 plan "became null and void after ten years from its approval by" DEP. *Id.* at 14-15. Thus, although a county must submit a revised waste management plan under 53 P.S. § 4000.501, the existing plan does not expire but is merely revised when certain conditions are met. *See id.* at 15.

## 2. The Regulatory Language

The trial court also acknowledged that 25 Pa. Code § 272.251(a)(2) states that a county must submit a revised plan at least three years "prior to the expiration of the term of the county's approved" waste management plan.[17] Trial Ct. Op., 6/30/20, at 2-3. Nevertheless, the trial court reiterated its reasoning that the Municipal Waste Act itself does not provide for the expiration of a plan and the phrase "10-year term" refers to a criterion of the waste management plan, *i.e.*, the plan must predict the county's waste needs for the next decade. *Id.* Thus, the trial court rejected the regulation because the Municipal Waste Act did "not impose a 'drop dead' date on a county's" plan. *Id.*[18]

## II. ISSUE

Appellants contend that under Section 506(b), the Authority cannot interfere with Appellants' December 2008 "lifetime" contract because the Authority's 1998 10-year waste management plan expired in November 2008.

[17] To recap, Section 271.251(a)(2) provides that a "county with an approved municipal waste management plan shall submit a revised plan to the Department in accordance with this subchapter at the earliest of the following events: . . . At least 3 years prior to the expiration of the term of the county's approved plan." 25 Pa. Code § 271.251(a)(2).

[18] We add that the trial court did not explicitly address whether the Authority-DEP settlement agreement retroactively extended the 1998 plan. Trial Ct. Op., 3/13/20, at 17. Rather, as noted herein, because the court concluded that the 10-year term referred to the planning period and not the plan itself, the Authority's 1998 plan never expired. *See id.* Because the Authority's 1998 plan never expired, the trial court did not have to resolve whether the Authority-DEP settlement agreement retroactively extended the 1998 plan. As noted herein, the parties and trial court did not address the DEP Guidance Document. *See generally Youth*, 66 A.3d at 310-11 (explaining that an agency's guidance documents may explain an agency's regulations).

Appellants' Br. at 4.

## III. DISCUSSION[19]

In support, Appellants essentially raise three interrelated arguments, which we briefly recap as follows. First, Appellants contend that the Authority's 1998 DEP-approved waste management plan expired in November 2008. *Id.* at 24. Second, and relatedly, the Authority's 2010 settlement agreement with DEP did not retroactively extend the Authority's 1998 plan beyond 2008. *Id.* at 35. Third, Section 506(b) prevents the Authority from interfering with Appellants' December 2008 "lifetime" contract, such that Mascaro can continue to haul the County's municipal waste to Keystone's landfill for the life of said landfill. *Id.* at 29, 35.

### A. Expiration of the Authority's 1998 Plan in November 2008[20]

In Appellants' view, the Municipal Waste Act and related regulations

---

[19] We review an order resolving a declaratory judgment for an abuse of discretion or an error of law. *Vanderhoff v. Harleysville Ins. Co.*, 78 A.3d 1060, 1065 (Pa. 2013); *Hangey v. Husqvarna Pro. Prods., Inc.*, 304 A.3d 1120, 1150 (Pa. 2023). "In reviewing the factual determinations of the trial court sitting as finder of fact, we must attribute to them the same force and effect as a jury's verdict." *Rizzo v. Haines*, 555 A.2d 58, 61 (Pa. 1989) (citations omitted). The "test is not whether we would have reached the conclusion of the trial court, but rather whether we reasonably could have reached the same result." *Id.* (citations omitted). Finally, we read all decisions against their facts and may affirm on any grounds evident from the record. *Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485-86 (Pa. 2009); *Mazer v. Williams Bros. Co.*, 337 A.2d 559, 562 n.6 (Pa. 1975). The "right for any reason" "doctrine may be applied by a reviewing court if the established facts support a legal conclusion producing the same outcome." *In re A.J.R.-H.*, 188 A.3d 1157, 1176 (Pa. 2018).

[20] Issues of statutory and regulatory interpretation are questions of law. *Corman v. Acting Sec'y of Pa. Dep't of Health*, 266 A.3d 452, 486 (Pa. 2021). For questions of statutory and regulatory interpretation, we are guided by the Statutory Construction Act of 1972, 1 Pa.C.S. § 1501-1991. *Id.* at 471; *Myers v. Commonwealth*, 289 A.3d 915, 925 (Pa. 2023). In that regard, if the statute is silent, ambiguous, or "not explicit," then we are guided by certain presumptions in "ascertaining the intent" of the legislature in enacting a statute. 1 Pa.C.S. § 1922; *see Tr. Under Agreement by Taylor*, 164 A.3d 1147, 1156 (Pa. 2017) (*Taylor*) (explaining that the statutory "provisions are ambiguous because neither section contains any explicit language addressing the issue raised here").

For example, one presumption is that the legislature did not intend an absurd result and

11

establish that a waste management plan has a 10-year term. *Id.* at 28, 36-38 (discussing, *inter alia*, 25 Pa. Code § 272.25l(a)). In addition to the regulations, Appellants also rely on the Authority's verified pleadings in *Keystone I*, in which the Authority stated that the term of the plan was from 1998 to 2008. *Id.* at 39. Appellants also cites *Keystone I*, in which this Court purportedly held that the plan expired in 2008. *Id.* at 40. Finally, Appellants reference DEP's March 2010 letter notifying the Authority that its plan had expired in November 2008. *Id.* at 40-41.[21]

---

"intends to favor the public interest as against any private interest." 1 Pa.C.S. § 1922(1), (5). Another presumption is that we must disfavor "an interpretation that could render some provisions superfluous or nullified by another." *In re Tr. Under Deed of Walter R. Garrison*, 288 A.3d 866, 873 (Pa. 2023) (*Garrison*) (cleaned up).

Additionally, we may consider, *inter alia*, "[l]egislative and administrative interpretations of such statute." 1 Pa.C.S. § 1921(c)(8); *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020) (*Crown*). Such interpretations include regulations. *Corman*, 266 A.3d at 485; *Youth*, 66 A.3d at 310. We may defer to an agency's regulation interpreting "ambiguous provisions of the statutes that [the agency] is charged with administering." *Corman*, 266 A.3d at 485 (cleaned up). If the regulation is silent, ambiguous, or "not explicit," then we may "defer to an agency's interpretation of its own [ambiguous] regulation unless that interpretation is plainly erroneous or inconsistent with the regulation." *Id.* (cleaned up). *Cf. Youth*, 66 A.3d at 312 (casting doubt on the applicable level of deference to an agency's interpretation of an ambiguous regulation). Plainly, we must hold that the statute or regulation is ambiguous before considering whether we should defer to an agency's interpretation of an ambiguous statute or regulation. *See Crown*, 234 A.3d at 674; *Corman*, 266 A.3d at 485-86.

Finally, we may not add "a requirement which the legislature did not see fit to include." *Pilchesky v. Lackawanna Cnty.*, 88 A.3d 954, 965 (Pa. 2014) (cleaned up); Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 536 (1947) ("One more caution is relevant when one is admonished to listen attentively to what a statute says. One must also listen attentively to what it does not say.").

[21] The Authority summarily counters that the Municipal Waste Act does not provide for expiration of 10-year plans. Authority's Br. at 13-14. The Authority contends that when it submitted revisions to the 1998 plan in 2006, the submission *de facto* extended the 1998 plan to 2015. *Id.* at 15. The Authority reasons that its 2010 settlement agreement with DEP "confirmed as authoritative" the *de facto* extension of the Authority's 1998 plan to 2015. *Id.* at 16-17 (disputing any characterization of the extension of the 1998 waste management plan as "retroactive"). In other words, the Authority's 1998 plan was in effect at the time Appellants executed their December 2008 contract. *See id.* The Authority did not address any regulations, including Appellants' discussion of 25 Pa. Code § 272.25l(a). Similarly, the parties did not cite any guidance documents.

12

The Municipal Waste Act and Solid Waste Management Act do not explicitly address whether a county's 10-year plan can expire. *See* Section 901 of the Solid Waste Management Act, 35 P.S. § 6018.901; Section 104(a)-(b) of the Municipal Waste Act, 53 P.S. § 4000.104(a)-(b).[22] Although Chapter 5 of the Municipal Waste Act addresses the submission and review of a county's 10-year waste management plan, it does not address expiration. *See* 53 P.S. §§ 4000.501-4000.513.[23]

In contrast to the statutes, DEP regulations refer to the expiration or life of a county's 10-year plan. For example, a DEP regulation requires a county to submit a revised waste management plan at "least 3 years prior to the *expiration* of the term of the county's approved plan." 25 Pa. Code § 272.251(a)(2) (emphasis added). Another DEP regulation states that a county's 10-year waste management plan ensures, among other items, "that each county has sufficient processing and disposal capacity for its municipal waste for at least 10 years." *Id.* § 272.201(1). Thus, a county's waste management plan must discuss "existing facilities [that] will be used for county waste during the *life* of the plan." *Id.* § 272.224(b)(1) (emphasis added). Nevertheless, DEP regulations are silent and "not explicit" regarding

---

Finally, because DEP successfully argued that it was *not* an indispensable party for the instant case, we do not have the benefit of DEP's advocacy. DEP's Br. in Supp. of Prelim. Objs. at 17-18, *Keystone I* (Pa. Cmwlth., No. 239 M.D. 2015, filed July 23, 2015).

[22] We must liberally construe the Municipal Waste Act together with the Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. § 6018.101-6018.1003 (Solid Waste Act). *See* Section 901 of the Solid Waste Act, 35 P.S. § 6018.901; Section 104(a)-(b) of the Municipal Waste Act, 53 P.S. § 4000.104(a)-(b) ("This act shall be construed *in pari materia* with the Solid Waste Management Act.").

[23] As discussed herein, Section 501(c)(1) provides, for example, that a county must submit a revised waste management plan three years before a landfill is "full." 53 P.S. § 4000.501(c)(1) (stating that a county must "submit a revised plan" "[a]t least three years prior to the time all remaining available permitted capacity for the county will be exhausted"). Section 501 does not reference expiration of a county's plan. *See id.*

whether a county's 10-year plan presumptively expires at the end of its term. *See generally* 25 Pa. Code §§ 271.1-285.225.[24]

Instantly, the Municipal Waste and Solid Waste Acts are silent, *i.e.*, not explicit, in stating whether a waste management plan expires after 10 years. *See* 1 Pa.C.S. § 1922; *Taylor*, 164 A.3d at 1156. We may not add a statutory requirement that a plan expires after 10 years. *See Pilchesky*, 88 A.3d at 965. Because the statutes are silent, we may refer to DEP's interpretations, *i.e.*, regulations construing silent statutes. *See* 1 Pa.C.S. §§ 1921(c)(8), 1922; *Corman*, 266 A.3d at 485. But DEP's regulations do not explicitly state that a plan expires after 10 years. *See Corman*, 266 A.3d at 485; *Taylor*, 164 A.3d at 1156; 25 Pa. Code §§ 271.1-285.225.

At least one DEP regulation, however, requires the Authority to submit a revised waste management plan at "least 3 years prior to the *expiration* of the term of the county's approved" waste management plan. 25 Pa. Code § 272.251(a)(2) (emphasis added); *id.* § 272.224(b)(1) (referencing a plan's "life"). Other DEP regulations refer to "10 years" or 10-year permits in various contexts. *See, e.g.*, *id.* §§ 271.225(a)-(b), 272.201(1). In addition, DEP's March 2010 letter notified the Authority that its plan *expired*. *See* Pls.' Ex. 7 (stating that the plan "is now expired and needs to be updated in order to meet [Municipal Waste Act] planning

---

[24] *See also, e.g.*, 25 Pa. Code §§ 271.211(a) (stating permit to dispose of municipal waste is for a fixed term "not to exceed 10 years," and DEP may consider renewal of the permit prior to expiration of the term), 271.223(a) (requiring renewal of permit to dispose of municipal waste prior to expiration of the permit's term), 272.225(a)-(b) (requiring estimate of future municipal waste capacity for the next 10 years), 272.231(a) (stating that a county's plan must include, *e.g.*, ordinances and negotiated contracts, that will ensure proper waste disposal for the next decade), 284.116 (addressing renewal of a "general permit" to process certain regulated waste, which must occur prior to expiration of the permit and which can be renewed for a maximum term of 10 years).

Because DEP regulations are silent, we could consider DEP guidance documents. But the parties did not discuss any such documents, including the DEP Guidance Document cited in DEP's March 2010 letter. *See Corman*, 266 A.3d at 485; *Youth*, 66 A.3d at 310; *see also* DEP Guidance Document (restating and expanding upon 25 Pa. Code § 272.251(a)(2)).

requirements for the next subsequent ten (10) year planning period").

These DEP regulations irreconcilably conflict with the trial court's holding that the Municipal Waste Act "does not impose a ten year deadline." *See* Trial Ct. Op., 6/30/20, at 4. Initially, the Municipal Waste and Solid Waste Acts do not address expiration. But that does not mean that the trial court may disregard DEP regulations. *See Corman*, 266 A.3d at 485. Accepting the trial court's holding would render superfluous regulatory language requiring the Authority to submit a new plan before "expiration of the term" of the existing plan. *See* 25 Pa. Code § 272.251(a)(2); *Garrison*, 288 A.3d at 873. The trial court's reasoning would also apparently render superfluous other regulations providing for a 10-year term for various permits. *See Garrison*, 288 A.3d at 873. If a 10-year plan never expired, then its not entirely evident why DEP would impose a similar 10-year term for various permits. *See id.*; *see also, e.g.*, 25 Pa. Code §§ 271.211(a). It is also difficult to reconcile the trial court's holding with DEP's March 2010 letter notifying the Authority that its plan "is now expired." *See* Pls.' Ex. 7; *see also* DEP Guidance Document at 3-4. *Cf. Youth*, 66 A.3d at 310 (noting courts should defer to guidance documents that "explain preexisting legal obligations"). In sum, if the Authority's waste management plan never expired, then the DEP regulation referencing expiration would be mere surplusage. *See Garrison*, 288 A.3d at 873.

For these reasons, the trial court erred as a matter of law in holding that the Authority's 10-year plan did not expire in November 2008. *See Vanderhoff*, 78 A.3d at 1065; *Corman*, 266 A.3d at 486. The Authority's 1998 plan expired in November 2008, before Appellants signed their "lifetime" contract. Although the trial court erred, we may nonetheless affirm on other grounds evident from the

record.[25]  *See Mazer*, 337 A.2d at 562 n.6; *In re A.J.R.-H.*, 188 A.3d at 1176.

## B. The Authority-DEP Settlement Agreement

Before summarizing Appellants' second interrelated argument, we briefly restate the following background.  In March 2010, DEP notified the Authority that its 1998 10-year plan had expired in 2008.  *Keystone I*, slip op. at 3; Pls.' Ex. 7.  Litigation ensued, and the Authority and DEP settled in October 2010.  Ex. D to Authority's Br. in Opp'n to Pls.' Mot. for Summ. J., 3/27/19 (settlement agreement).[26]

[25] To the extent Appellants apparently suggest we apply the law of the case or an analogous doctrine based upon *Keystone I*, we disagree.  Application of those doctrines generally require a decision by a court with adjudicatory authority.  *See generally Stradford*, 274 A.2d at 280.  Because the *Keystone I* Court dismissed the Authority's petition for lack of original jurisdiction, the *Keystone I* Court lacked adjudicatory authority to render any binding rulings.  *See id.*

[26] We quote the relevant settlement terms as follows:

WHEREAS, the County, through [Authority], developed a ten (10) year plan revision that was approved by [DEP] on November 20, 1998 ("the Plan").

WHEREAS, the County, through [Authority], completed two minor revisions of the 1998 Plan and passed Resolution R2006-03 on February 1, 2006, adopted the minor revisions, had solicited for waste disposal capacity and had entered into six (6) waste disposal capacity agreements to insure capacity through December 31, 2014.  The [Authority] submitted copies of those documents to DEP. . . .

. . . .

2. Without any determination of issues of fact or law except as set forth herein, the [Authority] intends to utilize the [1998 plan] and minor revisions noted above until December 31, 2014.  [DEP] agrees not to make a determination on the appropriateness of any existing disposal capacity agreement and the [Authority] agrees not to enter into any additional agreements, and/or renegotiate or renew existing agreements for disposal capacity pursuant to the provisions of the 2006 adopted County Plan[, *i.e.*, the proposed revisions to the 1998 Plan].

3. [Monroe] County and the [Authority] will initiate a full and complete ten (10) year substantial revision of the [1998] plan no later than January 3, 2011, in accordance with the requirements and standards provided in 25 Pa. Code, Chapter 272, §§ 272.251 and 272.252 of the Commonwealth's municipal waste regulations.

4. The County and the [Authority] will submit a complete and adopted Plan revision to [DEP] for review and approval by June 30, 2013.

Ex. D to Authority's Br. in Opp'n to Pls.' Mot. for Summ. J.

Appellants argue that the Authority-DEP settlement agreement did not retroactively extend the Authority's 1998 plan to 2015, *i.e.*, after Appellants executed their "lifetime" contract in December 2008. Appellants' Br. at 43. In support, they maintain that the Authority's 1998 plan expired in November 2008. *Id.* Appellants emphasize that it was two years later—in 2010—that the Authority and DEP settled their dispute and that "nothing in the settlement agreement . . . purported to retroactively extend the term of the 1998" plan beyond 2008. *Id.* at 44. They assert that the *Keystone I* Court held that "there was no agreement or determination as to whether an approved plan existed in December 2008," *i.e.*, when Appellants executed their contract. *Id.* at 44-45. But even if the 2010 Authority-DEP settlement agreement could retroactively extend a plan, Appellants argue that Section 506(b) bars the Authority from interfering with their contract. *Id.* at 45.[27]

Generally, we interpret settlement agreements under "contract law principles." *Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 342 (Pa. 2011). The *Lesko* Court explained that when the "language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended." *Id.* (emphasis in original and citation omitted). Although not involving a settlement agreement, the Superior Court addressed an analogous issue. *Ratner v. Iron Stone Real Est. Fund I, L.P.*, 212 A.3d 70 (Pa. Super. 2019). In *Ratner*, the issue was whether, after a limited partnership had dissolved, the partnership could be retroactively extended under the partnership agreement. *Id.* at 78. The *Ratner* Court construed the applicable law and held that it did not permit

---

[27] In response, the Authority summarily reiterates that when it submitted its revisions in 2006, the revisions "codified and extended the 1998 plan through December 2014 as agreed to by DEP . . . ." Authority's Br. at 19. The parties cited no caselaw construing the term "[w]ithout any determination of issues of fact or law" or an analogous term. The parties also cited no case law addressing whether a settlement agreement could retroactively extend an expired plan required by statute.

17

a rescission of a dissolution of a limited partnership. *Id.* at 80-81. Because the applicable law did not authorize rescission of a dissolution, the Superior Court reasoned that the partnership agreement could not retroactively rescind dissolution and extend the duration of the limited partnership. *Id.*

Instantly, upon careful review of the Authority-DEP settlement agreement, we discern no unambiguous language purporting to retroactively extend the 1998 plan beyond November 2008. *See Lesko*, 15 A.3d at 342. The settlement agreement states that without resolving any fact or law, the parties agreed to various terms. *See* Ex. D to Authority's Br. in Opp'n to Pls.' Mot. for Summ. J. The terms permit the Authority to use its 1998 plan until 2015, and none of those terms affirmatively, unambiguously retroactively extended the Authority's 1998 plan. *See id.*; *Lesko*, 15 A.3d at 342. *Cf. Ratner*, 212 A.3d at 81 (holding that if the law did not authorize a particular act, then the underlying contract could not authorize that act).[28]

### C. Applying Section 506(b) to Appellants' "Lifetime" Contract

Before summarizing Appellants' last interrelated argument, we state the following for context. Section 506(b) provides that no "contract for municipal waste disposal, processing or collection shall be entered into after the effective date of this act if such . . . contract [(1)] fails to conform to the applicable provisions of this act or [(2)] interferes with the implementation of a department-approved municipal waste management plan." 53 P.S. § 4000.506(b).[29]

---

[28] As noted herein, because the trial court reasoned that Authority's 1998 plan did not expire, it did not address whether the Authority-DEP settlement agreement retroactively extended the 1998 plan. Since we now hold that the Authority's 1998 plan expired, we would ordinarily have remanded to have the trial court address the unresolved issue. *See Chester Residents Concerned for Quality Living v. Dep't of Env't Res.*, 668 A.2d 110, 113 (Pa. 1995) (explaining that because it reversed one issue, it need not address the remaining issues). We need not remand if we could affirm the trial court on other grounds. *See Mazer*, 337 A.2d at 562 n.6.

[29] We quote Section 506 in full:

Appellants argue that Section 506(b) bars renewing or executing a new contract if the "renewal or new contract" interferes with a DEP-approved waste management plan. Appellants' Br. at 30-32 (discussing *Empire Sanitary Landfill, Inc. v. Dep't of Env't Res.*, 684 A.2d 1047 (Pa. 1996) (*Empire II*)). They emphasize that they seek only a determination that their "lifetime" contract falls within the scope of Section 506(b). *Id.* at 34-35. To that end, Appellants assert that the Authority had no DEP-approved plan in place when Appellants executed their December 2008 contract. *Id.* at 35. Thus, Appellants reason that Section 506(b) prevents the Authority from citing them for violating the current plan. *Id.*[30]

In *Empire II*, our Supreme Court discussed the intersection of Section

---

(a) **General rule.**--Except as otherwise provided in this act, nothing in this act shall be construed to interfere with, or in any way modify, the provisions of any contract for municipal waste disposal, processing or collection in force in any county, other municipality or municipal authority upon the effective date of this act or prior to the adoption pursuant to this act of a department-approved municipal waste management plan.

(b) **Renewals.**--No renewal of any existing contract upon the expiration or termination of the original term thereof and no new contract for municipal waste disposal, processing or collection shall be entered into after the effective date of this act if such renewal or such new contract fails to conform to the applicable provisions of this act or interferes with the implementation of a department-approved municipal waste management plan.

53 P.S. § 4000.506.

[30] The Authority concisely counters that a county's waste management plan is "prohibited from interfering with or modifying *only* those contracts that" predated the "implementation" of a county's waste management plan. Authority's Br. at 12 (emphasis in original). In the Authority's view, the Municipal Waste Act simply "does not contemplate an expiration of an existing" county waste management plan. *Id.* at 13. The Authority maintains that such a plan cannot expire, as the Municipal Waste Act merely imposes "planning intervals of 10 years." *Id.* The Authority reiterates, somewhat inartfully, that the Municipal Waste Act "does not allow for privately entered contracts after the initiation" of a county's plan. *Id.* at 14. More precisely, the Authority opines that parties cannot bypass a county's plan "by quickly entering into" such a contract "during brief windows of time [when] a plan revision is in the submission and approval process." *Id.*

506 and the contracts clause.[31] *Empire II*, 684 A.2d at 1059; *see generally Empire Sanitary Landfill, Inc. v. Dep't of Env't Res.*, 645 A.2d 413, 421 (Pa. 1994) (*Empire I*). To provide context, we briefly discuss the contracts clause, which protects "contracts freely arrived at by the parties to them from subsequent legislative impairment or abridgment." *First Nat'l Bank of Pa. v. Flanagan*, 528 A.2d 134, 137 (Pa. 1987) (citations omitted). "A later law cannot abridge rights under a prior contract. The only substantive laws in effect when the parties enter into a contract are implicitly incorporated into it." *Id.* (citations omitted). Thus, contracts "entered into or renewed after the effective date of the" statute cannot be subject to any "impairment" under the contracts clause. *DePaul v. Kauffman*, 272 A.2d 500, 506 (Pa. 1971).

Contracts that predate the effective date of the statute, however, do "not prevent the state from exercising such powers as are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected." *Id.* (cleaned up). Thus, existing contracts must yield to the state's police power. *Id.*[32] In other words, contracts regarding "any matter that is

---

[31] The federal contracts clause provides that "no state shall . . . pass any . . . law impairing the obligation of contracts . . . ." U.S. Const. art. I, § 10 (cleaned up). The Pennsylvania equivalent provides that no "law impairing the obligation of contracts . . . shall be passed." Pa. Const. art. I, § 17.

[32] The *DePaul* Court explained that the "constitutional protection of the obligation of contracts is necessarily subject to the police power of the state, and therefore a statute passed in the legitimate exercise of the police power will be upheld by the courts, although it incidentally destroys existing contract rights." *DePaul*, 272 A.2d at 506 (cleaned up).

More recently, this Court reemphasized that the contracts clause is not absolute. *South Union Twp. v. Dep't of Env't Prot.*, 839 A.2d 1179, 1188 n.13 (Pa. Cmwlth. 2003) (*Union*) (*en banc*) (sustaining preliminary objections and dismissing the petition for declaratory judgment). Per *Union*, although "the Contract Clause appears to proscribe any impairment, the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula. Literalism in the construction of the contract clause would make it destructive of the public interest by depriving the State of its prerogative of self protection." *Id.* (cleaned up). Further, "it is to be

20

subject to regulation under the [state's] police power must be understood as made in reference to the possible exercise of that power." *Zeuger Milk Co. v. Sch. Dist. of Pittsburgh*, 5 A.2d 885, 886 (Pa. 1939).

In resolving the exercise of police power, our Supreme Court discussed a three-part test. First, we "determine whether the state statute in reality has operated to *substantially* impair a contractual relationship." *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 614 A.2d 1086, 1094 n.4 (Pa. 1992) (citation omitted and emphasis added). Second, if substantial impairment exists, then we examine whether Pennsylvania "set forth a legitimate and significant public purpose" for the statute. *Id.* (citation omitted). Third, if Pennsylvania has identified a significant public purpose, then we determine "whether the adjustment of contractual rights is reasonable and of a nature appropriate to the public purpose justifying the legislation's adoption[.]" *Id.* But if Pennsylvania is not one of the contracting parties, then we must defer to the statute's significant public purpose. *Id.*

We return to *Empire I*, in which the relevant parties executed their contracts after the effective date of the Municipal Waste Act but before the county

accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States. It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals." *Id.* (cleaned up and quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 503-04 (1987)).

*DeBenedictis* resolved a contract clause challenge to a Pennsylvania statute that impaired preexisting private contracts. *DeBenedictis*, 480 U.S. at 478. The High Court agreed that "the impairment of private agreements effectuated by the [Pennsylvania statute] was justified by the legislative finding that" the statute would protect "the health, safety and general welfare of the people of the Commonwealth." *Id.* at 481, 485. "The Commonwealth has a strong public interest in preventing" the harm addressed by the statute at issue, "the environmental effect of which transcends any private agreement between contracting parties." *Id.* at 505.

21

adopted its initial waste management plan.[33]  *Empire I*, 645 A.2d at 415.  This Court reasoned that because the parties executed their contracts prior to the county's adoption of its plan, the county could not interfere with their contracts.  *Empire II*, 684 A.2d at 1052.[34]  On appeal to our Supreme Court, DEP challenged the *Empire I* Court's contracts clause reasoning.  *Id.* at 1058-59.  The *Empire II* Court affirmed, reasoning that such contracts were grandfathered in under Section 506(a) until such time a county implemented its first waste management plan.  *Id.* at 1059.  Although involving contracts, *Empire II* did not address the execution of a contract after a plan expired or the application of the three-part *Foster* test.

In contrast to the *Empire* cases, this Court applied the three-part *Foster* test in resolving a similar contracts clause challenge to a municipal waste contract. *Union*, 839 A.2d at 1184, 1188-89.  In *Union*, several municipalities had executed a contract with a third party for the collection and transportation of waste.  *Id.* at 1185. Subsequently, Pennsylvania enacted a statute ordering municipal waste landfill operators to collect and remit a fee, which (very simply) could be passed on as a surcharge.  *Id.* at 1184.  The third party essentially surcharged the municipalities.  *Id.*

---

[33] By way of background, the Municipal Waste Act had an effective date of September 1988.  *Empire I*, 645 A.2d at 415.  In 1988, Empire Sanitary Landfill (Empire) and Danella Environmental Technologies (Danella) executed a contract.  *Id.*  In 1989, Empire executed an amended contract that extended their original contract until December 1994, "with two ten-year renewal periods."  *Id.*  In 1991, the county adopted its first waste management plan, which was implemented in 1992, via county ordinance.  *Id.*  The county's plan did not designate Empire. *Empire II*, 684 A.2d at 1052.  DEP notified Danella that it had to comply with the county's plan by not transporting waste to Empire.  *Id.*

In 1992, Empire and Danella sued DEP and the county.  *Empire I*, 645 A.2d at 415.  In relevant part, they contended that the county's ordinance violated the contracts clauses of the United States and Pennsylvania Constitutions.  *Id.* at 420.  In resolving their contention, the *Empire I* Court noted that the county had adopted the waste management plan to "accomplish the goals of the" Municipal Waste Act, which "is a legitimate exercise of the state's police power."  *Id.* at 422.

[34] The *Empire I* Court resolved various other claims and ultimately granted in part and denied in part the parties' cross-motions for summary judgment.  *Empire I*, 645 A.2d at 422.  All parties appealed to the *Empire II* Court.  *Empire II*, 684 A.2d at 1050.

22

at 1185. The municipalities sued the Commonwealth, claiming, *inter alia*, that the statute impaired their contract rights. *Id.* at 1187. The Commonwealth, via preliminary objections, claimed that the municipalities failed to state a claim. *Id.*

In resolving the Commonwealth's claim, the *Union* Court assumed that the surcharge constituted a *substantial* impairment of contract rights. *Id.* at 1189. The *en banc* Court then reasoned that the contractual "impairment is outweighed by the necessity of the [surcharge] regulation and the benefits to the public good." *Id.* (citing *Empire II*). The *Union* Court pointed out that the fees are used for various "activities and projects [that] aid in protecting and preserving the environment throughout the Commonwealth for the use and enjoyment of all its citizens." *Id.* at 1190. Further, under *DeBenedictis*, the Court must "defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Id.*; *accord Foster*, 614 A.2d at 1094 n.4. Section 506(b), however, was not at issue in *Union*.

Instantly, under Section 506(b), Appellants' "lifetime" contract "interferes with the implementation of a department-approved municipal waste management plan," *i.e.*, the Authority's DEP-approved 2015 10-year plan. *See* 53 P.S. § 4000.506(b). The contract interferes because the Authority's 2015 plan did not designate Appellants as facilities that could dispose the County's waste. *See* Trial Ct. Op., 3/13/20, at 13-14. Appellants' contract, however, requires Mascaro to transport the County's waste to Keystone. *Id.* at 8-9. Thus, Appellants' contract interferes with the Authority's implementation of its 2015 waste management plan. *See also* DEP Guidance Document at 19 (defining when interference occurs).

Moreover, Appellants' contract is similar to the contract at issue in *Empire*, which also involved a county plan that did not designate one of the contracting parties as an approved landfill. *See Empire II*, 684 A.2d at 1052.

23

Appellants' contract is also similar to the contracts at issue in *Union*, which were impacted by a subsequent Pennsylvania law. *See Union*, 839 A.2d at 1184. *Union*, however, did not involve the Municipal Waste Act like *Empire II*. Although *Empire II* involved the Municipal Waste Act, *Empire II* addressed Section 506(a), which governs contracts executed prior to the effective date of the Municipal Waste Act or the county's first DEP-approved waste management plan. *See* 53 P.S. § 4000.506(a); *Empire II*, 684 A.2d at 1059. Thus, the *Empire* Courts did not address Section 506(b)—the instant section at issue—and also did not apply the three-part *Foster* test like the *Union* Court. *See Empire I*, 645 A.2d at 415; *Empire II*, 684 A.2d at 1058; *Maloney*, 984 A.2d at 485-86. We therefore disagree with Appellants to the extent they suggest that *Empire II* controls.

Under the three-part *Foster* test, first, we assume the Municipal Waste Act substantially impairs Appellants' "lifetime" contract. *See Union*, 839 A.2d at 1189. *Cf. Empire I*, 645 A.2d at 422. Second, we agree with *Empire I* that the Municipal Waste Act provides "for the long-term disposal of solid waste" and thus was "a legitimate exercise of the state's police powers." *See Empire I*, 645 A.2d at 422; *see also Union*, 839 A.2d at 1189. The Municipal Waste Act has legitimate, significant public purposes. 53 P.S. § 4000.102(b)(3), (14); *see also Empire I*, 645 A.2d at 422; *Union*, 839 A.2d at 1189.

Last, we examine whether the impairment of Appellants' "lifetime" "contractual rights is reasonable and of a nature appropriate to the public" purposes justifying the Municipal Waste Act. *See Foster*, 614 A.2d at 1094 n.4. Because Pennsylvania is not one of the contracting parties, we defer to the Municipal Waste Act's significant public purposes. *See id.* Those purposes include protecting the County from the dangers posed by the transportation and disposal of waste,

24

including the operation of landfills. *See* 53 P.S. § 4000.102(b)(3), (14). The Municipal Waste Act achieves such purposes by, *inter alia*, penalizing violations of the Authority's 10-year waste management plan. *Id.* §§ 4000.1701(a), .1705. Further, the Municipal Waste Act and regulations are replete with references to 10-year terms. *See, e.g.*, 53 P.S. § 4000.502(d). In that light, Appellants' "lifetime" contract subverts the Authority's 10-year plan, particularly when Appellants declined to participate in the bidding process to be designated businesses in the Authority's 2015 plan. *See* Trial Ct. Op., 3/13/20, at 13-14. Plainly, impairment of Appellants' "lifetime" contract is reasonable and appropriate to achieve the significant public purposes of the Municipal Waste Act. *See Union*, 839 A.2d at 1189; *DeBenedictis*, 480 U.S. at 503-04; *see also* 53 P.S. § 4000.102(b)(3), (14).

In sum, Appellants executed their 2008 "lifetime" contract after the Authority's 1998 plan had expired and prior to DEP's approval of the Authority's 2015 plan. *See* 53 P.S. § 4000.506(b). But Appellants' "lifetime" contract "interferes with the implementation of" the Authority's 2015 plan because Appellants are not designated businesses under the Authority's plan. *See id.* Nevertheless, Appellants cannot invoke Section 506(b) to "immunize themselves against" the Authority's legitimate exercise of its police power given the significant public purposes of the Municipal Waste Act. *See* 53 P.S. § 4000.102(b)(3), (14); *Union*, 839 A.2d at 1192.

## IV. CONCLUSION

For these reasons, we affirm the trial court's order on other grounds. *See Mazer*, 337 A.2d at 562 n.6; *In re A.J.R.-H.*, 188 A.3d at 1176; *see also Vanderhoff*, 78 A.3d at 1065. First, the Authority's 1998 plan expired in 2008. Second, the Authority-DEP settlement agreement did not retroactively extend the Authority's 1998 plan. Third, on this record, Appellants may not invoke Section 506(b) to shield

their "lifetime" contract.  *See Foster*, 614 A.2d at 1094 n.4.

_____

LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keystone Sanitary Landfill, Inc. and : 
Solid Waste Services, Inc. d/b/a J.P. : 
Mascaro & Sons, : 
                   Appellants : 
                :   No. 746 C.D. 2020
        v. : 
                : 
Monroe County Municipal Waste : 
Management Authority : 

## **O R D E R**

AND NOW, this 27th day of March, 2024, we AFFIRM the order of the Monroe County Court of Common Pleas, entered June 30, 2020, in favor of the Monroe County Municipal Waste Management Authority, and adverse to Keystone Sanitary Landfill, Inc. and Solid Waste Services, Inc., doing business as J.P. Mascaro & Sons.

 

LORI A. DUMAS, Judge